**COLIN M. RUBICH**
**Assistant U.S. Attorney**
**U.S. Attorney's Office**
**2601 Second Ave. N., Ste. 3200**
**Billings, MT 59101**
**Phone: (406) 247-4684**
**Fax: (406) 657-6989**
**E-mail: Colin.Rubich@usdoj.gov**

**ATTORNEY FOR PLAINTIFF**
**UNITED STATES OF AMERICA**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MONTANA**
**BUTTE DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | **CR 24-25-BU-DLC** |
| **Plaintiff,** | **UNITED STATES SENTENCING MEMORDANUM** |
| **vs.** | |
| **ALAINA MARIE GARCIA,** | |
| **Defendant.** | |

The United States of America, represented by Assistant United States

Attorney Colin M. Rubich, files its sentencing memorandum.

**OBJECTIONS TO THE PSR**

Ms. Garcia, through her attorneys, maintains several objections to the PSR.

Before addressing these issues, it should be noted that none of these objections

affect the calculation of the advisory guideline.  Moreover, many of the objections

1

seem to be minor quibbles regarding how the PSR referred to her employment or pending state charges.  The United States sees little utility in addressing these matters.

Nevertheless, the United States feels it is worth addressing her objection as to how she spent the covid relief funds in this case.  Though these complaints do not change the guideline, they seem to significantly undermine any notion that the defendant is taking responsibility for her crimes or feels remorse.

Garcia asserts that, though the funds may have been improperly obtained, she used them in permissible ways to support her business.  Such assertions are self-serving and completely contradicted by the evidence.  The two largest payments at issue in this case are a $613,333.00 PPP loan she received in May of 2020 and a $875,000.00 PPP loan she received in March of 2021.

Setting aside the fact that these loans were obtained by making multiple material falsehoods (including that she had paid payroll tax, had 32 employees and a monthly payroll of several hundred thousand dollars), the record clearly reflects that Garcia did not use these monies for authorized purposes. As required by the terms of the PPP program, Garcia signed a loan application that stated the funds "will be used to retain workers and maintain payroll or make mortgage interest payments, lease payments, and utility payments, as specified under the Paycheck Protection Program Rules." PSR 7.

With regard to the first loan of $613,333.00, Garcia used $548,000.00 (89.3% of the total loan value) to purchase 214 S Black Ave, Bozeman, MT 59715. This property is a residential home that Garcia had originally inherited in 2015. She sold this property for profit in 2019.  Using the PPP loan to buy it back was an investment, and, consequently, not a permissible use of the funds.  It was not a mortgage or lease payment.  It was not a utility payment.  And it was certainly not payroll costs for employees which she did not have.

Garcia knew this and, to cover up her misconduct, made multiple lies to get this first PPP loan forgiven.  In July of 2020, she stated that she spent $459,999.75 on payroll costs, $61,333.30 on commercial mortgage costs, and smaller amounts for a variety of other business-related expenses.  All of these costs were fabrications and clearly impossible given she spent 89% of the loan proceeds to buy back a house she had previously sold for profit.

Similarly, regarding the $875,000.00 PPP loan issued in 2021, Garcia used $377,500.00 (43% of the loan total) to buy real estate in Eckert, Colorado.  Once again, investing in new real property was not an authorized use of the money.  Another $450,000.00 (51% of the loan total) was sent to Timothy Kahl.  As shown in government's exhibit 1, this payment was similarly unrelated to keeping her business afloat or paying her employees.  Instead, the money was used to repay a short-term personal loan made to Garcia (not her company) that she entered into

with Kahl in June of 2020.  Kahl stated he made the loan to Garcia so that she could repurchase 214 S Black Ave, Bozeman, MT 59715 (the same property she purchased with the first PPP loan). Consequently, the purchase of the Colorado property and the Kahl loan represented 94% of the total loan amount.  Once again, this wasn't payroll, or mortgages, or utilities.  It was all for Garcia and to her private benefit.

This analysis is unambiguous and was a simple result of tracing how the funds were used via the bank account for her business.  As such, the defendant's continued insistence that she used the money in authorized ways is aggravatingly inaccurate.  She did not use the loans to support her nonexistent employees, and there is nothing in the evidence or the record that contradicts this.  Garcia obtained these funds under fraudulent pretenses and then used the money in ways that were not authorized by the program.  Those are the uncomplicated and unambiguous facts of this case and the defendant's continued insistence to the contrary should be considered by this court when trying to determine her contrition and accountability.

## SENTENCING RECOMMENDATION

The damage Alaina Garcia caused through her criminal activity is difficult to fully articulate.  Though it was only five years ago, it can be difficult to remember the Covid-19 pandemic in a way that fully articulates the trauma and uncertainty

4

that existed at that time.  We all lived through it, but it was so unprecedented and so traumatizing that it is difficult to recreate the sense of national dread and uncertainty that existed for every person in this country.

Physically, we lived everyday with the possibility we would be sickened with a novel virus that was killing millions of people across the globe.  Socially, we were isolated and unable to appreciate the basic comforts of human contact we all unconsciously rely on.  Financially, we feared economic collapse and the widespread loss of income and occupation such a collapse would cause.  In 2026, such concerns might seem overblown or unfounded, but such a dismissal is an affectation created from the benefit of hindsight.  In 2020, as the pandemic raged, these concerns were very real, and the future loomed before all of us uncertain and terrifyingly unknowable.

Though remembering that period with emotional accuracy can be unpleasant, it is also extremely important to do so to achieve a just sentence in this case.  All too often, government fraud can seem less consequential than other forms of fraud.  After all, the federal government is vast in power and resources.  Consequently, any money lost by such an entity is of little consequence.  This attitude is always misguided, but particularly so in this case.  The money Garcia misused in this case was a product of the Covid era.  It was born of the uncertainty and dread described above.  The government created the PPP program to protect

all of us from the very real possibility of economic catastrophe that would have made a dire health emergency even more devastating and deadly. The money was supposed to be used by legitimate employers to ensure their employees continued to receive paychecks. It was a lifeline to protect small businesses from bankruptcy.

It was not supposed to be an opportunity for petty self-enrichment on the government's dime, but that seems to be exactly how Alaina Garcia viewed it. A program meant to protect everyday employees became a vehicle for Garcia to obtain and squander vast sums of taxpayer funds for her private benefit.

The lies she told to obtain this money were seemingly endless. Garcia claimed she had 32 employees and paid payroll taxes. She had no employees and did not pay payroll taxes. She claimed she had a monthly payroll expense of $245,533.00 when she actually had none. In July 2020, Garcia claimed she used $459,999.75 of her first PPP loan to fund payroll. In July of 2022, she claimed she used $656,250.00 of her second PPP loan to fund payroll. In actuality, she did not use a single dollar of either PPP loan to keep anyone employed. Lie after lie, she kept making them in order to conceal a simple and ugly truth: Alaina Garcia took $1,646,500.00 in taxpayer money that was supposed to help people stay employed during a national emergency and spent it on herself. She bought property and installed a hot tub in her home. She paid off her credit cards. The world burned and she helped herself.

The defendant lacks any mitigating reason why she committed this crime. She was not fighting an addiction or experiencing significant mental illness; she just saw an opportunity to enrich herself at taxpayer expense and took it.  The criminal thinking required to act in such a manner is extreme and, consequently, a just punishment in this case should include a significant period of incarceration.

Given her actions, the United States believes there is nothing in this case that would justify a below guideline sentence.  Moreover, the severity of her crimes and the lack of extenuating reasons for her actions justify a sentence at the high end of the guideline. As such, the United States recommends a sentence of 37 months of imprisonment followed by five years of supervised release.  This is a significant sentence for someone with no criminal history, but it is warranted in this case. Garcia's actions hurt all of us at a time of national crisis.  The money she stole should have been utilized to keep people employed, but instead she took it to spend on herself.  As such, a sentence of 37 months incarceration is appropriate.  This sentence will punish Garcia, instill a respect for the law, and deter her, and those like her looking to commit similar crimes, from further acts like this in the future.

Garcia's actions were despicable, and she should be ashamed.  It is time for her to face the consequences of those actions.  Hopefully, accountability in this case will help ensure that the public knows federal money is appropriately

protected and shepherded and people like Garcia are appropriately punished when

they misuse such funds.  The integrity and credibility of our society depend on it.

DATED this 11th day of May, 2026.

TIMOTHY J. RACICOT
Acting United States Attorney


*/s/ Colin M. Rubich*
COLIN M. RUBICH
Assistant U. S. Attorney

8